THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNIE BELTON, Defendant-Appellant.

First District (1st Division)    No. 81-627

Opinion filed March 22, 1982.

Ralph Ruebner, Steven Clark, and Bruce Mosbacher, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Edward F. Cozzi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Ernie Belton was sentenced to five years in the penitentiary after his conviction by a jury of the offense of unlawful use of weapons in carrying a loaded firearm in a vehicle within five years of release from the penitentiary. (Ill. Rev. Stat. 1979, ch. 38, pars. 24—1(a)(10) and 24—1(b).) He appeals, contending that he was denied a fair trial (1) by the State's exercise of its peremptory challenges so as to deny him a jury made up of members representative of the community and (2) by the prosecutor's final argument. We affirm.

Because no contention is made that defendant was not proved guilty beyond a reasonable doubt, the evidence need not be detailed at length.

At approximately 11:30 p.m. on February 13, 1980, police officers Fitzgerald and Strombeck were driving south on Wells Street in an unmarked car. They turned west onto Schiller Street. A grey Buick was being driven west directly in front of them. Defendant was in the front passenger seat, with Keith Belton, defendant's nephew, in the rear seat behind defendant. Leroy Mayfield was the driver. Defendant turned to look at the unmarked car.

Officer Fitzgerald observed the front passenger window go down and an arm extend from the window with a gun in his hand. When the emergency lights on the police car were activated, the person in the front passenger seat threw the gun. A loaded gun was recovered near the car. Officer Strombeck said that when he approached the car in which defendant was a passenger, the front passenger window was down and the rear window closed.

Defendant testified that he turned to look back because someone said the police were following them. While he was looking back, his nephew sitting behind him in the back seat rolled down the back window, stuck his hand out the window and pulled his hand into the car. Defendant did not see a gun thrown from the car. Defendant further testified that one of the police officers asked his nephew what he threw out the window and his nephew said, "Nothing. I didn't throw nothing out the window."

It was stipulated that defendant had been convicted of burglary February 6, 1978, and released from incarceration from Pontiac Correctional Center September 20, 1979.

We find this evidence sufficient to sustain the jury's guilty verdict.

We disagree with defendant's first contention that he was denied a fair trial by the State's exercise of its peremptory challenges so as to deny him a jury made up of members representative of the community.

At the selection of the jury, the court reporter was excused after preliminary comments by the trial court to the prospective jurors. After nine members of the jury panel had been selected, defense counsel made the following oral motion:

> "MR. GANT: I'm moving at this time that the jurors who have been selected that that entire venire be dismissed and that a new venire be brought up. I predicate my motion, Your Honor, on one very, very blatant, I feel anyway, abuse by the prosecution of its use of peremptory challenges. The prosecution has exercised, according to my records, peremptory challenges; of the 8, 7 have been used against either blacks or other minorities."

He also noted that "[t]here is nothing in the information that we were able to garner to indicate that these 7 minorities were excused for any other reason than race." The prosecutor argued that the State need not give any reason for the exercise of a peremptory challenge and that one black had

been seated on the jury. Defense counsel countered that the fact that one black had been put on the jury did not vitiate the argument that there had been a systematic exclusion of blacks from the jury. He orally gave very brief biographic sketches of some of the challenged jurors and noted that some had backgrounds "that a prosecutor looks for in a juror." The court denied defendant's motion, stating that defense counsel had "not made a prima facie case that the State has systematically excluded blacks or in broader terms minorities."

After the selection of the jury had been completed, the following discussion took place prior to the State's opening statement:

> "THE COURT: Mr. Gant, while your client is present, I wanted to make a comment regarding a motion you made regarding the systematic exclusion of minorities. I made no notes during yesterday's selection as to the race or background of the 10 people you excluded and approximately 12, 13 or 14 the Court excused. However, it did come to my mind when I brought the 9 jurors in the court room this morning, Jesus Quintana (phonetic spelling) who is a juror and I suppose you would catagorize him as a minority, I would, he was not excluded by the State.
>
> MR. GANT: I got lucky that time.
>
> THE COURT: I guess there are two minorities of the original nine. I just wanted to make that point for the record.
>
> MR. GANT: All right."

Defendant argues that the above proceedings show an abuse of the peremptory challenge, thus denying defendant an impartial jury made up of persons representative of the community as required by article I, section 8, of the Illinois Constitution and the sixth and fourteenth amendments to the United States Constitution.

The applicable test for the use of peremptory challenges is set out in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. Defendant argues that the test in that case is all but impossible for an individual to meet and the proper test is that set out in *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, which held that where there is a showing by defendant that there is a substantial likelihood that the prosecutor exercised its peremptory challenges so as to deny defendant a jury made up of members representative of the community, it is the responsibility of the trial court to determine whether the State properly exercised its challenges and that this test should be adopted in Illinois.

In *People v. Mims* (1981), 103 Ill. App. 3d 673, 678, in holding that the defendant there was not denied her Federal or State constitutional rights by the State's exercise of its peremptory challenges allegedly so as to exclude black women from the jury, the court said:

"Several Illinois cases have recently considered *Wheeler*, and reached somewhat different conclusions as to its merit. In *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, the court appears to have followed the reasoning in *Wheeler*, but declined to reverse on the ground that evidence of purposeful exclusion of blacks from jury service was insufficient. (91 Ill. App. 3d 523, 530-32.) The language in *Smith*, in support of *Wheeler*, has been subsequently narrowly construed as *dictum* in *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 421 N.E.2d 840, and *People v. Bracey* (1981), 93 Ill. App. 3d 864, 870, 417 N.E.2d 1029. In both *Bracey* and *Vaughn*, the courts declined to decide whether *Wheeler* should be adopted in Illinois, because defendant failed to establish a *prima facie* case of purposeful discrimination.

The court in *People v. Fleming* (1980), 91 Ill. App. 3d 99, 105-06, 413 N.E.2d 1330, and this court in *People v. Allen* (1981), 96 Ill. App. 3d 871, 878, 422 N.E.2d 100, expressly refused to follow *Wheeler*, finding the test articulated therein vague and uncertain, and one which would severely undermine the purpose of the challenge. In light of the foregoing authorities we decline to alter the rule prevailing in Illinois, particularly where, as in this case, evidence of purposeful exclusion of black females is speculative and insufficient."

The supreme court denied leave to appeal in *Fleming*. (83 Ill. 2d 571.) *Fleming* was followed in *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511.

In *People v. Gaines* (1981), 88 Ill. 2d 342, 358-59, 430 N.E.2d 1046, the Supreme Court of Illinois said:

"The defendant's remaining objection to the jury goes to its racial composition. The defendant, who is black, states that the jury contained no black persons, and that that circumstance resulted from the prosecution's having used some of its peremptory challenges to exclude veniremen who were black but were not subject to removal for cause. The defendant concedes that under *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the motives of the prosecution in exercising peremptory challenges are not subject to examination absent a showing that blacks have been systematically prevented from serving on particular juries or from jury service in the county or State, a showing not attempted here. (See 380 U.S. 202, 221-23, 13 L. Ed. 2d 759, 773-74, 85 S. Ct. 824, 836-37.) A similar position has been taken by this court in *People v. Harris* (1959), 17 Ill. 2d 446, 450-51, *cert. denied* (1960), 362 U.S. 928, 4 L. Ed. 2d 747, 80 S. Ct. 755; *cf. People v.*

*Powell* (1973), 53 Ill. 2d 465, 477-78; *People v. King* (1973), 54 Ill. 2d 291, 298.

The defendant cites *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, and *Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170, in which the supreme courts of California and of Massachusetts rejected *Swain*, and he urges that this court should follow their lead. As had been the case in *Swain*, the defendants in *Wheeler* and in *Soares* were black, and the victims were white. In *Wheeler*, the prosecution peremptorily challenged all the black veniremen, in *Soares* all but one. In each case the conviction was reversed, the court holding that when a defendant has made a *prima facie* case that the prosecution has excluded veniremen on the basis of their race, the prosecution then has the burden to show that its exclusion of the jurors was based on other grounds.

The question whether this court should depart from the principle adopted by the Supreme Court in *Swain* and overrule its decision in *Harris* is not presented in this case, however. As the State points out, the defendant did not raise this issue until all the jurors had been sworn. Moreover, he failed to make a record which would show that the veniremen who were peremptorily challenged by the State were black. Such a showing is required even under *Wheeler* and *Soares*. See *People v. Wheeler* (1978), 22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905; *Commonwealth v. Soares* (1979), 377 Mass. 461, ___, 387 N.E.2d 499, 517."

The record here is insufficient for this court to consider the argument advanced.

In *People v. Poliquin* (1981), 97 Ill. App. 3d 122, 421 N.E.2d 1362, the court held that the propriety of the State's peremptory challenge could not be considered by it where the jury selection proceedings were not preserved by a report of proceedings, a bystander's report or an agreed statement of facts. Statements of counsel could not be accepted in lieu of them. Here, there was neither a report of proceedings, a bystander's report, nor an agreed statement of facts, only a statement by counsel.

In *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 18, 427 N.E.2d 1005, the court said:

"Second, defendant contends that he was denied his right to a fair and impartial jury where the State exercised nine of its 10 peremptory challenges to exclude black jurors. However, no transcript of the *voir dire* is included in the record. Such a record

showing the circumstances surrounding the exercise of the challenges is necessary, for without it we cannot decide whether the challenges were exercised solely because prospective jurors were black. (*People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029, citing *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330.) In *Bracey*, the court under similar circumstances held that a defendant's burden of proving a *prima facie* case of discrimination could not be met through the use of numbers alone. We agree with this holding and the court's observation that the peremptory challenge system would suffer severely if defendant, after meeting so minimal a burden, could require the State to explain its reasons for striking jurors."

■■ The record before us is insufficient to show that those prospective jurors who were peremptorily challenged were black or members of minority groups, a showing required under *Wheeler* and *Soares*. Thus, even if *Wheeler* were to be adopted, the evidence here was insufficient to require a reversal.

Defendant asserts that certain arguments of the prosecutor were reversibly erroneous. We disagree.

Great latitude is allowed prosecution counsel in closing argument. Each case must be decided on its own facts. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Arguments and statements based upon the facts in evidence or upon legitimate inferences drawn therefrom are not outside the bounds of proper argument. *People v. Oliger* (1975), 32 Ill. App. 3d 889, 336 N.E.2d 769.

One of defendant's objections is directed to the following comment by the prosecutor in his closing argument:

"Our burden here is to prove the defendant guilty beyond a reasonable doubt, that is the same burden that exists in every case that is tried in Cook County whether it be a petty theft, whether it be a murder or whether it's the offense of unlawful use of weapons. It's not an unreasonable burden, it's not a burden that is impossible to achieve."

Defendant contends that this comment had the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a *pro forma* or minor detail.

■■ This contention has been waived by defendant. Defendant's motion for a new trial was oral and the State did not object to the use of the oral motion. Ordinarily this will not result in a waiver upon defendant's part to argue any ground on appeal. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 852, 410 N.E.2d 931, *appeal denied* (1981), 82 Ill. 2d 586.) But that rule does not apply here because defense counsel stated that his oral motion was "predicated on the objections made during the course of the trial." He

made no objection at the time of the above comment, nor did he make any argument at all in support of his oral motion.

■■ But even if the claimed error was not waived, it is without merit. In *People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127, the court considered a similar argument directed to a similar closing argument by the prosecutor. The court there said:

> "Defendant relies on *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86, in which the court found similar comments objectionable, as having the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a pro-forma or minor detail. In *Martinez*, the prosecutor said that the State had 'no quarrel' about its burden of proving the defendant's guilt beyond a reasonable doubt and added that the people 'throughout the United States * * * are being found guilty beyond a reasonable doubt every day of the week.' The State correctly points out that this comment, if error, may be considered to have been waived by the failure of the defendant to object at trial. In addition, defendant's written post-trial motion made no reference to this particular comment in rebuttal. Nevertheless, we consider *People v. Martinez* to be distinguishable. In *Martinez*, the court reversed on other grounds. Although the court considered the foregoing quoted remarks to be 'improper,' along with other improper prosecutorial comments, it did not say that this comment, standing alone, could be considered to be reversible error. Under the facts of this case, we consider that any error was harmless beyond a reasonable doubt and did not contribute to the jury's verdict." 96 Ill. App. 3d 880, 883-84.

In addition to *Martinez*, defendant here also relies on *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599. In the latter case, the court there, too, while finding the comment improper, refused to reverse on that ground because it did not contribute to the defendants' convictions under the facts before the courts in those cases. Similarly here, while we consider the comments "improper" we do not consider them to be grounds for reversal in view of the facts in the record.

Defendant's other objection is directed at the prosecutor's comment on defendant's failure to call as witnesses the other two occupants of the car. This, defendant contends, unfairly shifted the burden of proof to defendant. We disagree.

Defendant relies on *People v. Popely* (1976), 36 Ill. App. 3d 828, 345 N.E.2d 125, and *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68, for the principles that a prosecutor may not comment on defendant's failure to call specific witnesses unless there is evidence that these witnesses were unavailable to the State and that such comments tend to shift

the burden of proof to the accused and may lead the jury to believe that defendant is under obligation to call witnesses.

■■ Even accepting these principles, we find no reversible error in the comment here. In *People v. Turner* (1981), 93 Ill. App. 3d 61, 416 N.E.2d 1149, the court refused to reverse because the prosecutor commented on the fact that defendant had failed to call certain witnesses. The court there said:

> "Defendant argues that the prosecutor's comment constitutes reversible error as an accused has no duty to produce a witness who is equally accessible to the State. (*People v. Rubin* (1937), 366 Ill. 195, 7 N.E.2d 890; *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68; *People v. Pearson* (1972), 2 Ill. App. 3d 861, 277 N.E.2d 544; *People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416.) The theory behind these cases is that to permit such comment conflicts with the doctrine of the presumption of innocence and places a burden on the accused which the law does not require. The State cannot substitute the failure of a defendant to produce a witness as substantial proof of the charge. In the case at bar, the State could have proved its case without commenting on defendant's failure to produce witnesses. It was error to make such a comment. However, the testimony of the complaining witness was credible, clear and convincing." (93 Ill. App. 3d 61, 67.)

Here, defendant's testimony showed he was seated in the front passenger seat of the car and the testimony of the police officer was clear that a gun was thrown by an arm thrust out of the open window on the front passenger's side. In view of this evidence, we find that any error in the prosecutor's comment does not require a reversal.

Whether considered singly or in combination, we find that these remarks of the prosecutor do not constitute reversible error.

We cannot say that the verdict herein would have been otherwise had the improper remarks not been made. (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739.) Also, we cannot say that these remarks resulted in substantial prejudice to the accused. *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200; *People v. Jackson* (1981), 100 Ill. App. 3d 318, 321, 426 N.E.2d 1132.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.